# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF UTAH, by and through its Governor, SPENCER J. COX, and its Attorney General, DEREK E. BROWN, ) ) ) ) ) | |
| Petitioner, ) ) | |
| v. ) ) | Case No. 25-1061 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. EPA, ) ) ) ) | |
| Respondents. ) | |

## PROTECTIVE PETITION FOR REVIEW

Under the Clean Air Act Section 307(b)(1), 42 U.S.C. § 7607(b)(1), the Administrative Procedure Act, 5 U.S.C. § 702, Federal Rule of Appellate Procedure 15(a), and D.C. Circuit Rule 15, *as a protective matter only to preserve its right to petition for judicial review*, the State of Utah ("Utah") petitions this Court for review of the final rule of the United States Environmental Protection Agency ("EPA") titled "Denial of Request for Attainment Date Extension, Finding of Failure To Attain, and Reclassification of an Area in Utah as Moderate for the 2015 Ozone National Ambient Air Quality Standards," published in the Federal Register at

89 Fed. Reg. 101,483 (Dec. 16, 2024) (EPA Docket No. EPA-R08-OAR-2024-0001). A copy of EPA's final rule is attached to this Protective Petition.

Utah contends that the final rule is "locally or regionally applicable" and is reviewable "in the United States Court of Appeals for the appropriate circuit." 42 U.S.C. § 7607(b)(1). In the final rule, EPA denied Utah's request to extend the attainment date for Utah's Uinta Basin marginal nonattainment area for the 2015 8-hour ozone National Ambient Air Quality Standards. *See* 89 Fed. Reg. 101,483. EPA then determined that this area did not attain the ozone standard by the applicable attainment date and reclassified the area to moderate nonattainment. *See id*. The final rule does not apply to any other areas in the United States but applies only locally to the Uinta Basin area in Utah's northeastern portion.

EPA also did not make any findings that the final rule is "based on a determination of nationwide scope or effect." 42 U.S.C. § 7607(b)(1). Accordingly, Utah's petition for review properly belongs in the U.S. Court of Appeals for the Tenth Circuit under the venue provisions of the Clean Air Act, Section 307(b)(1), *id*. Utah has a pending petition for review in the Tenth Circuit.

The U.S. Supreme Court is reviewing the venue question under 42 U.S.C. § 7607(b)(1). *See Oklahoma et al. v. Env't Prot. Agency*, No. 23-9514 (U.S. April 1, 2024). Given the potential uncertainty associated with the forthcoming decision, Utah files the Protective Petition in this Court as a protective measure to preserve

2

Utah's right to judicial review should the venue be determined improper in the Tenth Circuit.

Dated: February 14, 2025.

Respectfully submitted,

*/s/ Marina V. Thomas*

Derek E. Brown
UTAH ATTORNEY GENERAL

Stanford E. Purser
SOLICITOR GENERAL
Utah Attorney General's Office
160 East 300 South, Fifth Floor
P.O. Box 140858
Salt Lake City, Utah 84114-0858
Ph. (801) 366-0533
spurser@agutah.gov

Marina V. Thomas
Braden W. Asper
ASSISTANT UTAH ATTORNEYS GENERAL
Utah Attorney General's Office
Environment, Health & Human Services Division
195 North 1950 West, Second Floor
P.O. Box 140873
Salt Lake City, UT 84114-0873
Ph. (801) 536-0290
marinathomas@agutah.gov
bradenasper@agutah.gov

*Counsel for Petitioner State of Utah*

# CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the foregoing Petition for Review by certified mail, return receipt requested, addressed to the following:

Hon. Lee Zeldin
Office of the Administrator (1101A)
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Hon. Pam Bondi
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Correspondence Control Unit
Office of General Counsel (2311)
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Dated: February 14, 2025

/s/ Andrea A. Gaytan
ANDREA A. GAYTAN
Paralegal, Utah Attorney General's Office



### § 62.6357   Missouri Department of Natural Resources.

(a) *Identification of plan.* Missouri plan for control of landfill gas emissions from existing municipal solid waste landfills and associated state regulations submitted on January 26, 1998, with amendments on September 8, 2000, February 9, 2012, and July 25, 2022. The plan includes the regulatory provisions cited in paragraph (d) of this section, which EPA incorporates by reference.

(b) *Identification of sources.* The plan applies to all existing municipal solid waste landfills for which construction, reconstruction, or modification was commenced before May 30, 1991, that accepted waste at any time since November 8, 1987, or that have additional capacity available for future waste deposition, and have design capacities greater than 2.5 million megagrams and nonmethane organic emissions greater than 50 megagrams per year, as described in 40 CFR part 60, subpart Cc.

(c) *Effective date.* The effective date of the plan for municipal solid waste landfills is June 23, 1998. The amendments are effective January 16, 2001, May 30, 2012, and January 15, 2025, respectively.

(d) *Incorporation by reference.* (1) Certain material is incorporated by reference into this section with the approval of the Director of the Federal Register under 5 U.S.C. 552(a) and 1 CFR part 51. All approved incorporation by reference material is available for inspection at the Environmental Protection Agency (EPA) and at the National Archives and Records Administration (NARA). Contact the EPA Region 7 office, 11201 Renner Boulevard, Lenexa, Kansas 66219; telephone number: (913) 551–7003; email address: *prue.allyson@epa.gov*. You may obtain copies from the EPA Region 7 office or the EPA Docket Center—Public Reading Room, EPA West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004; telephone number: (202) 566–1744. For information on the availability of this material at NARA, visit *https://www.archives.gov/federal-register/cfr/ibr-locations* or email *fr.inspection@nara.gov*. You may also obtain this material from the source in paragraph (d)(2) of this section.

(2) State of Missouri, 600 West Main Street, Jefferson City, Missouri 65101; telephone number: (573) 751–4015; *https://www.sos.mo.gov/adrules/csr/current/10csr/10csr.asp#10-10*.

(i) 10 CSR 10–5.490, Municipal Solid Waste Landfills, effective July 30, 2022.

(ii) 10 CSR 10–6.310, Restriction of Emissions from Municipal Solid Waste Landfills, effective July 30, 2022.

[FR Doc. 2024–29404 Filed 12–13–24; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 81

[EPA–R08–OAR–2024–0001; FRL–12469–01–R8]

### Denial of Request for Attainment Date Extension, Finding of Failure To Attain, and Reclassification of an Area in Utah as Moderate for the 2015 Ozone National Ambient Air Quality Standards

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is denying a request by the State of Utah and the Ute Indian Tribe for an extension of the attainment date for the Uinta Basin, Utah Marginal nonattainment area under the 2015 ozone National Ambient Air Quality Standards (NAAQS). In addition, we are determining that the area did not attain the standard by the applicable attainment date, and accordingly that the area will be reclassified by operation of law to ''Moderate'' nonattainment for the 2015 ozone NAAQS on the effective date of this final rule. With respect to the Uinta Basin area, this action fulfills the EPA's obligation under the Clean Air Act (CAA) to determine whether ozone nonattainment areas attained the NAAQS by the Marginal area attainment date and to publish a document in the **Federal Register** identifying each area that is determined as having failed to attain and identifying the reclassification.

**DATES:** This rule is effective on January 15, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID No. EPA–R08–OAR–2024–0001. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available through *https://www.regulations.gov,* or please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section for additional availability information.

**FOR FURTHER INFORMATION CONTACT:** Amanda Brimmer, Air and Radiation Division, EPA, Region 8, Mailcode 8ARD–AQ–R, 1595 Wynkoop Street, Denver, Colorado 80202–1129, telephone number: (303) 312–6323, email address: *brimmer.amanda@epa.gov*.

**SUPPLEMENTARY INFORMATION:** Throughout this document wherever ''we,'' ''us,'' or ''our'' is used, we mean the EPA.

### I. Overview of Action

The EPA is required to determine whether areas designated nonattainment for an ozone NAAQS attained the standard by the applicable attainment date, and to take certain steps for areas that failed to attain (see CAA section 181(b)(2)). The EPA's determination of attainment for the 2015 ozone NAAQS is based on a nonattainment area's design value (DV) as of the attainment date.[1]

The 2015 ozone NAAQS is met at a monitoring site when the DV does not exceed 0.070 parts per million (ppm). This action addresses the Uinta Basin area in Utah, which includes portions of Duchesne and Uintah Counties. The Uinta Basin was initially classified as Marginal for the 2015 ozone NAAQS and received a 1-year extension of the attainment date in 2022, making the Marginal area attainment date for this area August 3, 2022. As further explained in the Response to Comment document in the docket, in this action we are denying a request for a second 1-year extension. Accordingly, the applicable attainment date for the area remains August 3, 2022. Because DVs are based on the three most recent, complete calendar years of data preceding the attainment date, attainment must occur no later than December 31 of the year before the attainment date (*i.e.,* December 31, 2021, in the case of the Uinta Basin Marginal nonattainment area for the 2015 ozone NAAQS). Accordingly, the EPA's determination for this area is

---

[1] A DV is a statistic used to compare data collected at an ambient air quality monitoring site to the applicable NAAQS to determine compliance with the standard. The data handling conventions for calculating DVs for the 2015 ozone NAAQS are specified in appendix U to 40 CFR part 50. The DV for the 2015 ozone NAAQS is the 3-year average of the annual fourth highest daily maximum 8-hour average ozone concentration. The DV is calculated for each air quality monitor in an area, and the DV for an area is the highest DV among the individual monitoring sites located in the area.

based upon the complete, quality-assured, and certified ozone monitoring data from calendar years 2019, 2020, and 2021.

The EPA is finding that the Uinta Basin Marginal area did not attain by the attainment date, because the area's 2019–2021 DV was 0.078 ppm, which is greater than 0.070 ppm. Under CAA section 181(b)(2)(A), the effect of this determination is that this area will be reclassified by operation of law as Moderate on the effective date of this final rule. The reclassified area will then be subject to the Moderate area requirement to attain the 2015 ozone NAAQS as expeditiously as practicable, but not later than August 3, 2024.

As a result of the area's reclassification as Moderate, Utah must submit to the EPA the State Implementation Plan (SIP) revisions for this area that satisfy the statutory and regulatory requirements applicable to Moderate areas established in CAA section 182(b) and in the 2015 Ozone NAAQS SIP Requirements Rule (see 83 FR 62998, December 6, 2018). The EPA will be establishing deadlines for the Uinta Basin area for submitting SIP revisions and for planning requirements on Indian Country in a separate action.

## II. What is the background for this action?

On October 26, 2015, the EPA issued its final action to revise the NAAQS for ozone to establish a new 8-hour standard (*see* 80 FR 65452, October 26, 2015). In that action, the EPA promulgated identical tighter primary and secondary ozone standards, designed to protect public health and welfare, that specified an 8-hour ozone level of 0.070 ppm. Specifically, the standards provide that the 3-year average of the annual fourth highest daily maximum 8-hour average ozone concentration may not exceed 0.070 ppm.

Effective August 3, 2018, the EPA designated 52 areas throughout the country as nonattainment for the 2015 ozone NAAQS (see 83 FR 25776, June 4, 2018). In a separate action, the EPA assigned classification thresholds and attainment dates based on the severity of an area's ozone problem, determined by the area's DV (see 83 FR 10376, May 8, 2018). Consistent with CAA section 181(a), the EPA established the attainment date for Marginal, Moderate, and Serious nonattainment areas as 3 years, 6 years, and 9 years, respectively, from the effective date of the final designations. Thus, the attainment date for Marginal nonattainment areas for the 2015 ozone NAAQS was August 3, 2021; the attainment date for Moderate areas was August 3, 2024; and the attainment date for Serious areas is August 3, 2027. On October 7, 2022 (87 FR 60897), the EPA determined that 22 areas, including the Uinta Basin area, did not attain the standards by the Marginal attainment date. All of these areas except the Uinta Basin were reclassified as Moderate by operation of law. As to the Uinta Basin, however, EPA granted a 1-year extension of the attainment date, to August 3, 2022.

The State of Utah requested a second 1-year extension of the attainment date for the Uinta Basin, to August 3, 2023. On December 20, 2022, the Ute Indian Tribe also requested a second one-year extension.[2] Granting this extension would make the relevant years for evaluating attainment 2020–2022. On April 10, 2024 (89 FR 25223), EPA proposed to grant the request for a second extension, and to determine that the area attained by this attainment date based on data from 2020–2022. EPA took public comment on this proposal through May 10, 2024.

## III. What is the statutory authority for this action?

The statutory authority for this determination is provided by the CAA, as amended (42 U.S.C. 7401 *et seq.*), including sections 107, 181 and 182.

CAA section 107(d) provides that when the EPA establishes or revises a NAAQS, the agency must designate areas of the country as nonattainment, attainment, or unclassifiable based on whether each area is not meeting (or is contributing to air quality in a nearby area that is not meeting) the NAAQS, meeting the NAAQS, or cannot be classified as meeting or not meeting the NAAQS, respectively. Subpart 2 of part D of title I of the CAA governs the classification, state planning, and emission control requirements for any areas designated as nonattainment for a revised primary ozone NAAQS. In particular, CAA section 181(a)(1) requires each area designated as nonattainment for a revised ozone NAAQS to be classified at the same time as the area is designated based on the extent of the ozone problem in the area (as determined based on the area's DV). Classifications for ozone nonattainment areas are "Marginal," "Moderate," "Serious," "Severe," and "Extreme," in order of stringency. CAA section 182 provides the specific attainment planning and additional requirements that apply to each ozone nonattainment area based on its classification.

Section 181(b)(2)(A) of the CAA provides that within 6 months following the applicable attainment date, the EPA must determine whether an ozone nonattainment area attained the ozone standard based on the area's DV as of that date. Section 181(a)(5) of the CAA provides the EPA the discretion (*i.e.,* "the Administrator may") to extend an area's applicable attainment date by one additional year upon application by any state if the state meets the two criteria under CAA section 181(a)(5), as interpreted by the EPA at 40 CFR 51.1307. No more than two one-year extensions may be issued for a single nonattainment area. CAA section 181(a)(5).

With respect to the first criterion, the EPA interprets the provision as having been satisfied if a state can demonstrate that it is in compliance with its approved implementation plan. *See Delaware Dept. of Nat. Resources and Envtl. Control* v. *EPA,* 895 F.3d 90, 101 (D.C. Cir. 2018) (holding that the CAA requires only that an applying state with jurisdiction over a nonattainment area comply with the requirements in its applicable SIP, not every requirement of the Act); *see also Vigil* v. *Leavitt,* 381 F.3d 826, 846 (9th Cir. 2004). A state may meet this requirement by certifying its compliance, and in the absence of such certification, the EPA may make a determination as to whether the criterion has been met. *See Delaware,* 895 F.3d at 101–102.

Application of the second criterion differs depending on whether it is being applied to a first or a second extension.[3] For a second extension, the EPA has interpreted the air quality criterion of CAA section 181(a)(5)(B) to mean that an area's 4th highest daily maximum 8-hour value, averaged over both the original attainment year and the first extension year, must be no greater than 0.070 ppm.[4]

We evaluated the information submitted by the Utah Division of Air Quality (UDAQ) and proposed to determine that the area met the two necessary statutory criteria for the second 1-year extension under CAA section 181(a)(5) and 40 CFR

---

[2] *See* letter dated December 20, 2022, from Ute Indian Tribe Chairman Shaun Chapoose to U.S. EPA Region 8 Regional Administrator KC Becker.

[3] *See* 40 CFR 51.1307 (pertaining to determining eligibility under CAA section 181(a)(5)(B) for attainment date extensions for the 2015 ozone NAAQS).

[4] *See id.* As of October 31, 2024, the Uinta Basin area's certified 2020 and 2021 ozone data show that the maximum two-year average design value for 2020–2021 is 0.069 ppm. This is based on 2020 and 2021 ozone values at the two key monitors in the region (AQS Site 490472002, which had fourth highest daily maximum 8-hour value for 2020 at 0.066 ppm, and AQS Site 490472003, which had fourth highest daily maximum 8-hour value for 2021 at 0.072 ppm, which averaged is 0.069 ppm.).

51.1307(a)(2). We stated that no other facts or circumstances compelled the EPA Administrator to consider information beyond the statutory criteria (see 89 FR 25223, 25226 (Apr. 10, 2024)). But we also explicitly asked the public to weigh in on the EPA's findings: "[t]he EPA solicits comments on this proposal to grant the requested second 1-year attainment date extension . . . and whether there are any particular circumstances . . . that the EPA should consider before granting the request." *Id.* We still conclude that the area met the two minimum statutory criteria, but after considering public comments received, air quality data, potential impacts on populations in the nonattainment area, and other relevant factors, EPA is exercising its discretion not to grant the request.

An exercise of discretion is involved in denying *or* granting an ozone attainment date extension, once the two minimum statutory criteria are met. *See, e.g., New York* v. *EPA,* 921 F.3d 257, 298 (D.C. Cir. 2019) (internal citations omitted) (finding under a similarly constructed CAA provision that "[t]he statute requires this showing to be made, but once it has been made, the statute provides only that EPA 'may' expand the region, not that it 'shall' or 'must' do so . . . In other words, this requirement is a necessary but not sufficient condition for expansion of the region"). With respect to CAA section 181(a)(5), the D.C. Circuit has acknowledged that the provision grants the EPA discretion to look beyond the two enumerated factors. *Delaware,* 895 F.3d 90, 100 (D.C. Cir. 2018) (noting that despite its holding that the EPA was not *required* to determine every state in a multi-state nonattainment area's compliance with its SIP under section 181(a)(5)(A), "EPA nevertheless *retained discretion* to consider Delaware's compliance, given that the Act only dictates that EPA 'may' grant an extension when the statute's requirements are met") (emphasis added). The court added that the EPA's exercise of discretion under this provision is subject to arbitrary-and-capricious review, such that the Agency "must cogently explain why it has exercised *its discretion* in a given manner." *Id.* (emphasis in original) (citing *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.* v. *State Farm Auto. Ins. Co.,* 463 U.S. 29, 48 (1983)). The statute does not compel the Agency to grant an extension when the two criteria are met, and it is reasonable to exercise our discretionary authority in light of the Act's goals.

CAA section 181(a)(5), which establishes the extension process for ozone nonattainment areas, mirrors the extension process established in the general nonattainment area provisions at CAA section 172(a)(2)(C), and is appropriately read in light of the Act's focus on the expeditious attainment of the NAAQS—both in subpart 2 specifically [5] and in part D more generally.[6] The ultimate goal of part D of the CAA, which governs planning requirements for nonattainment areas, and the responsibility of states and the EPA under that section of the Act, is to drive progress in nonattainment areas toward attainment as expeditiously as practicable but by no later than the maximum attainment dates prescribed by the Act.

We are denying this extension after evaluating and considering the public comments received and carefully reviewing the area's air quality data. We conclude that it is appropriate to exercise our discretion to deny the extension to ensure the expeditious attainment of the NAAQS in the Uinta Basin, and that granting the State's and Tribe's request for a second 1-year extension and finding that the area attained by the extended Marginal attainment date would potentially delay needed improvement of the area's air quality and protection of human health and the environment. As noted in the proposal, we are encouraged by the progress of emissions reductions in the area. However, after reviewing the public comments on the proposal, we agree with commenters that recent air quality concentrations indicate that continued application of the planning requirements of subpart 2 of the CAA, which are designed to achieve attainment of the ozone NAAQS, would help ensure that those reductions, along with other reductions if they are determined to be necessary, result in attainment of the NAAQS.

As discussed in further detail in the Response to Comments document,

---

[5] CAA section 181(a)(1).

[6] *See, e.g.,* CAA section 171(1) (defining reasonable further progress as annual incremental reductions in emissions of the relevant air pollutant . . . for the purpose of ensuring attainment of the applicable [NAAQS] by the applicable attainment date"); CAA section 172(a)(2)(A) (establishing attainment dates for the primary NAAQS as "the date by which attainment can be achieved as expeditiously as practicable, but no later than 5 years from the date such area was designated nonattainment under [107(d)] of this title"); CAA section 172(c)(1) (requiring implementation of all reasonably available control measures as expeditiously as practicable and that plans provide for attainment of the NAAQS); CAA section 172(c)(6) (requiring state plans to include enforceable emission limitations, and such other control measures, means or techniques, as well as schedules and timetables for compliance, as may be necessary or appropriate to provide for attainment of the NAAQS by the applicable attainment date).

monitoring values do show an overall trend towards attainment. But we also recognize the importance and significance of the high ozone levels recorded in 2023. The Uinta Basin is quite unusual among ozone nonattainment areas, in that the area has elevated terrain surrounding a low basin, and in that the highest ozone levels tend to occur during the winter months. Specifically, when strong and persistent temperature inversions form over snow-covered ground in the Uinta Basin, this results in a stable atmosphere which traps emissions and allows them to accumulate and react with sunlight to form ozone.[7] Additionally, because sunlight reflects off snow, under these conditions there is even higher reactivity and thus higher ozone levels. Conversely, in years without these meteorological conditions (such as 2020 and 2021), local anthropogenic emissions typically will not create high wintertime ozone concentrations. Therefore, EPA is concerned that it remains probable that the area will continue to experience high ozone levels in years where these meteorological conditions are met.

Granting the extension and determining that the area attained by its attainment date would mean that the Uinta Basin would remain in Marginal nonattainment, even though the area has experienced significant violations of the NAAQS after the attainment date and likely will do so in the future if the same meteorological conditions reoccur in future winters. Those future meteorological conditions could result in similar violations of the ozone NAAQS again, because none of the specific mechanisms and controls in part D and subpart 2, which require that emission reductions result in attainment, would apply to the area. For example, while Marginal nonattainment areas are subject to requirements such as periodic inventories and nonattainment new source review (NNSR) permitting, the vital nonattainment planning requirements that result in imposition of controls and actual emission reductions, such as reasonable further progress, attainment demonstration controls and modeling, and reasonable available control technology (RACT), apply only to areas classified as Moderate and above. Therefore, if EPA were to finalize its proposed approval of Utah's request for an extension and determine that the area attained by its Marginal area

---

[7] See Regulatory Impact Analysis (RIA) for the U&O O&NG FIP for a more detailed discussion of winter ozone. This can be viewed in Docket ID No. EPA–R08–OAR–2015–0709 at *https://regulations.gov/document/EPA-R08-OAR-2015-0709-0260.*

attainment date, the area could continue violating the 2015 ozone NAAQS indefinitely without being subject to any of the CAA's attainment planning requirements and consequences that were designed to ensure that nonattainment areas progress to attainment. Timely attainment of the ozone NAAQS also serves to ensure that communities in the Uinta Basin are not exposed to disproportionate health and environmental impacts.

Accordingly, we are not finalizing the action as proposed, and are instead denying the request for a second extension. Further, we are determining that the area failed to attain by the Marginal attainment date of August 3, 2022. These final actions are within the scope of our proposed action. *See Arizona Pub. Serv. Co.* v. *EPA,* 211 F.3d 1280, 1299 (D.C. Cir. 2000) ("[T]he final rule was not wholly unrelated or surprisingly distant from what EPA initially suggested. In first proposing that Tribes would have to meet the 'same requirements' as states, EPA effectively raised the question as to whether this made sense."); Final rule, Denial of Request for Extension of Attainment Date for 1997 PM$_{2.5}$ NAAQS; California; San Joaquin Valley Serious Nonattainment Area, 81 FR 69396, 69400 (Oct. 2, 2016) ("Implicit in any such proposal to grant an extension requested by a state is the possibility that the EPA may decide to deny the extension, after considering public comments."). For a discussion of comments received on the proposal and responses to those comments, please see the Response to Comments document in the docket for this action.

If an ozone nonattainment area fails to attain the ozone NAAQS by the applicable attainment date and is not granted a 1-year attainment date extension, CAA section 181(b)(2)(A) requires the EPA to make the determination that the area failed to attain the ozone standard by the applicable attainment date, and the area is reclassified by operation of law to the higher of: (1) the next higher classification for the area, or (2) the classification applicable to the area's DV as of the determination of failure to attain. Section 181(b)(2)(B) of the CAA requires the EPA to publish the determination of failure to attain and accompanying reclassification in the **Federal Register** no later than 6 months after the attainment date, which in the case of the Uinta Basin Marginal nonattainment area was February 3, 2023.

Once an area is reclassified, each state that contains a reclassified area must submit certain SIP revisions in accordance with the more stringent classification. The SIP revisions are intended to, among other things, demonstrate how the area will attain the NAAQS as expeditiously as practicable, but no later than August 3, 2024, the Moderate area attainment date for the 2015 ozone NAAQS. Per CAA section 182(i), a state with a reclassified ozone nonattainment area must submit the applicable attainment plan requirements "according to the schedules prescribed in connection with such requirements" in CAA section 182(b) for Moderate areas, but the EPA "may adjust applicable deadlines (other than attainment dates) to the extent such adjustment is necessary or appropriate to assure consistency among the required submissions." EPA will address the SIP revision and implementation deadlines for the Uinta Basin in a separate rulemaking.

The above obligations of the State of Utah do not extend to the portions of the Uinta Basin nonattainment area consisting of Indian country lands within the Uintah & Ouray Reservation of the Ute Indian Tribe.[8] Section 301(d) of the CAA authorizes the EPA to treat Indian Tribes in the same manner as states for purposes of implementing the CAA over their reservations or other areas within their jurisdiction, and directs the EPA to promulgate regulations specifying those provisions of the CAA for which such treatment is appropriate.[9] Section 301(d) also authorizes the EPA, when the EPA determines that the treatment of Indian Tribes in the same manner as states is inappropriate or administratively infeasible, to provide by regulation other means by which the EPA will directly administer the CAA.[10]

EPA regulations promulgated under this authority provide a process for interested Tribes to seek treatment in a similar manner as a state (TAS) for all CAA purposes except for a specified list of exceptions.[11] In addition, these regulations include a provision requiring the EPA to "promulgate without unreasonable delay such Federal implementation plan provisions as are necessary or appropriate to protect air quality," unless a complete CAA Tribal Implementation Plan (TIP) is submitted or approved.[12] The Ute Indian Tribe has not sought TAS status for the purpose of submitting or developing a TIP for the portion of the nonattainment area consisting of Indian country lands within its reservation. Accordingly, the EPA intends to address attainment planning obligations for the Indian country portions of the Uintah & Ouray Reservation within the Uinta Basin nonattainment area through one or more separate rulemaking actions, in accordance with the EPA's authority and responsibility to protect air quality in Indian country under section 301(d)(4) of the CAA and 40 CFR 49.11.

### IV. How does EPA determine whether an area has attained the standard?

The level of the 2015 ozone NAAQS is 0.070 ppm.[13] Under EPA regulations at 40 CFR part 50, appendix U, the 2015 ozone NAAQS is attained at a site when the 3-year average of the annual fourth highest daily maximum 8-hour average ambient ozone concentration (*i.e.,* the DV) does not exceed 0.070 ppm. When the DV does not exceed 0.070 ppm at each ambient air quality monitoring site within the area, the area is deemed to be attaining the ozone NAAQS. Each area's DV is determined by the highest DV among monitors with valid DVs.[14]

---

[8] *Okla. Dep't of Envtl. Quality* v. *EPA,* 740 F.3d 185, 194 (D.C. Cir. 2014) (For purposes of a Clean Air Act SIP, "[a] state therefore has regulatory jurisdiction within its geographic boundaries except where a Tribe has a reservation. . . ."). The Uintah & Ouray Reservation's boundaries have been addressed and explained in a series of federal court decisions. Consistent with those decisions, the EPA considers all lands within the U&O Reservation's boundaries to be "Indian country" as defined in 18 U.S.C. 1151, subject to federal court decisions holding that specified Congressional acts removed certain lands from Indian country status. *See Ute Indian Tribe* v. *Utah,* 521 F. Supp. 1072 (D. Utah 1981); *Ute Indian Tribe* v. *Utah,* 716 F.2d 1298 (10th Cir. 1983); *Ute Indian Tribe* v. *Utah,* 773 F.2d 1087 (10th Cir. 1985) (en banc), *cert. denied,* 479 U.S. 994 (1986); *Hagen* v. *Utah,* 510 U.S. 399 (1994); *Ute Indian Tribe* v. *Utah,* 935 F. Supp. 1473 (D. Utah 1996); *Ute Indian Tribe* v. *Utah,* 114 F.3d 1513 (10th Cir. 1997), *cert. denied,* 522 U.S. 1107 (1998); *Ute Indian Tribe* v. *Utah,* 790 F.3d 1000 (10th Cir. 2015), *cert. denied,* 136 S. Ct. 1451 (2016); *Ute Indian Tribe* v. *Myton,* 835 F.3d 1255 (10th Cir. 2016), *cert. denied,* 582 U.S. 952 (2017); *Hackford* v. *Utah,* 845 F.3d 1325, 1327 (10th Cir.), *cert. denied,* 138 S. Ct. 206 (2017).

[9] 42 U.S.C. 7601(d)(1) and (2); see 63 FR 7254–57 (Feb. 12, 1998) (explaining that CAA section 301(d) includes a delegation of authority from Congress to eligible Indian Tribes to implement CAA programs over all air resources within the exterior boundaries of their Reservations).

[10] 42 U.S.C. 7601(d)(4).

[11] See 40 CFR 49.3 (General Tribal Clean Air Act authority), 49.4 (Clean Air Act provisions for which it is not appropriate to treat Tribes in the same manner as States); see generally 40 CFR part 49, subpart A (Tribal Authority).

[12] 40 CFR 49.11(a).

[13] See 40 CFR 50.19.

[14] According to appendix U to 40 CFR part 50, ambient monitoring sites with a DV of 0.070 ppm or less must meet minimum data completeness requirements in order to be considered valid. These requirements are met for a 3-year period at a site if daily maximum 8-hour average ozone concentrations are available for at least 90% of the days within the ozone monitoring season, on average, for the 3-year period, with a minimum of at least 75% of the days within the ozone monitoring season in any one year. Ozone monitoring seasons are defined for each state in appendix D to 40 CFR part 58. DVs greater than

The data handling convention in 40 CFR part 50 appendix U states that concentrations are to be reported in ppm to the third decimal place, with additional digits to the right being truncated. Thus, a 3-year average ozone concentration of 0.071 ppm is greater than 0.070 ppm and would exceed the standard, but a 3-year average ozone concentration of 0.0709 ppm is truncated to 0.070 ppm and attains the 2015 ozone NAAQS. The EPA's determination of whether the Uinta Basin attained the standard is based on hourly ozone concentration data for calendar years 2019, 2020, and 2021 that have been collected and quality-assured in accordance with 40 CFR part 58 and reported to the EPA's Air Quality System (AQS) database.[15]

### V. What action is EPA taking?

After evaluating the comments received, as explained in detail in the Response to Comments document in the docket for this action, EPA is denying the request for a second extension of the attainment date for the area.

Further, the EPA is determining, pursuant to CAA section 181(b)(2), that the Uinta Basin nonattainment area failed to attain the 2015 ozone NAAQS by the attainment date of August 3, 2022. As shown in table 1 at least one monitor in this area had a 2019–2021 DV greater than 0.070 ppm. Table 1 shows the annual fourth highest daily maximum 8-hour average ozone concentration and 2019–2021 DV for each monitor in the Uinta Basin areas.

TABLE 1—2019–2021 FOURTH HIGHEST DAILY MAXIMUM 8-HOUR AVERAGE OZONE CONCENTRATIONS AND DESIGN VALUES AT ALL MONITORS IN THE UINTA BASIN AREA

| AQS site ID | Local site name | Fourth highest daily maximum 8-hour average ozone concentration (ppm) | | | 2019–2021 DV (ppm) |
|---|---|---|---|---|---|
| | | 2019 | 2020 | 2021 | |
| 490130002 | Roosevelt | 0.087 | 0.063 | 0.072 | 0.074 |
| 490137011 | Myton | 0.079 | 0.064 | 0.069 | 0.070 |
| 490471002 | Dinosaur National Monument | 0.070 | 0.063 | 0.068 | 0.067 |
| 490471004 | Vernal | 0.065 | 0.063 | 0.068 | 0.065 |
| 490472002 | Redwash | 0.074 | 0.066 | 0.071 | 0.070 |
| 490472003 | Ouray | 0.098 | 0.065 | 0.072 | 0.078 |
| 490477022 | Whiterocks | 0.067 | 0.065 | 0.068 | 0.066 |

Because of the area's failure to attain by its attainment date, on the effective date of this final action this area will be reclassified by operation of law to Moderate nonattainment for the 2015 ozone NAAQS. Once reclassified as Moderate, this area will be required to attain the standard "as expeditiously as practicable" but no later than 6 years after the initial designation as nonattainment, which in this case would be no later than August 3, 2024.

EPA will address whether the area attained the standard by the Moderate date, and any related consequences, in a future action.

### VI. Statutory and Executive Order Reviews

*A. Executive Order 12866: Regulatory Planning and Review, and Executive Order 14094: Modernizing Regulatory Review*

This action is not a "significant regulatory action" under the terms of Executive Order 12866 (58 FR 51735, October 4, 1993) and is therefore not subject to review under Executive Order 14094 (88 FR 21879, April 11, 2023).

*B. Paperwork Reduction Act (PRA)*

This rule does not impose an information collection burden under the provisions of the PRA of 1995 (44 U.S.C. 3501 *et seq.*). This action does not contain any information collection activities and serves only to make a final determination that the Uinta Basin nonattainment area failed to attain the 2015 ozone standards by the August 3, 2022, attainment date, as a result of which the area will be reclassified as Moderate nonattainment for the 2015 ozone standards by operation of law upon the effective date of this final reclassification action.

*C. Regulatory Flexibility Act (RFA)*

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA (5 U.S.C. 601 *et seq.*). This action will not impose any requirements on small entities. The determination of failure to attain the 2015 ozone standards and resulting reclassifications, do not in and of themselves create any new requirements beyond what is mandated by the CAA. This final action would require the state to adopt and submit SIP revisions to satisfy CAA requirements and would not itself directly regulate any small entities.

*D. Unfunded Mandates Reform Act (UMRA)*

This action does not contain any unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538 and does not significantly or uniquely affect small governments. The action imposes no enforceable duty on any state, local or Tribal governments or the private sector.

*E. Executive Order 13132: Federalism*

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government. The division of responsibility between the Federal government and the states for purposes of implementing the NAAQS is established under the CAA.

---

0.070 ppm are considered to be valid regardless of the data completeness.

[15] The EPA maintains the AQS, a database that contains ambient air pollution data collected by the EPA, state, local, and Tribal air pollution control agencies. The AQS also contains meteorological data, descriptive information about each monitoring station (including its geographic location and its operator) and data quality assurance/quality control information. The AQS data is used to (1) assess air quality, (2) assist in attainment/non-attainment designations, (3) evaluate SIPs for non-attainment areas, (4) perform modeling for permit review analysis, and (5) prepare reports for Congress as mandated by the CAA. Access is through the website at *https://www.epa.gov/aqs.*

*F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments*

This action has Tribal implications. However, it will neither impose substantial direct compliance costs on federally recognized Tribal governments, nor preempt Tribal law.

The EPA has identified Tribal areas within the nonattainment area covered by this final rule that would be potentially affected by this rulemaking. Specifically, the Ute Indian Tribe of the Uintah & Ouray Reservation in the Uinta Basin, Utah ozone nonattainment area.

The EPA has concluded that the final rule may have Tribal implications for this Tribe for the purposes of Executive Order 13175 but would not impose substantial direct costs upon the Tribe, nor would it preempt Tribal law. As noted previously, a Tribe that is part of an area that is reclassified from Marginal to Moderate nonattainment is not required to submit a TIP revision to address new Moderate area requirements. However, when the EPA finalizes the determinations of failure to attain proposed in this action, the NNSR major source threshold and offset requirements will change for stationary sources seeking preconstruction permits in any nonattainment areas newly reclassified as Moderate.

The EPA will communicate with the potentially affected Tribe located within the boundary of the nonattainment area addressed in this final rule, including offering government-to-government consultation, as appropriate.

*G. Executive Order 13045: Protection of Children From Environmental Health and Safety Risks*

EPA interprets Executive Order 13045 (62 FR 19885, April 23, 1997) as applying to those regulatory actions that concern environmental health or safety risks that EPA has reason to believe may disproportionately affect children, per the definition of ''covered regulatory action'' in section 2–202 of the Executive Order. This action is not subject to Executive Order 13045 because it does not establish an environmental standard intended to mitigate health or safety risks.

*H. Executive Order 13211: Actions That Significantly Affect Energy Supply, Distribution, or Use*

This action is not subject to Executive Order 13211 (66 FR 28355, May 22, 2001) because it is not a significant regulatory action under Executive Order 12866.

*I. National Technology Transfer and Advancement Act (NTTAA)*

This rulemaking does not involve technical standards. Therefore, EPA is not considering the use of any voluntary consensus standards.

*J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations*

Executive Order 12898 (Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations, 59 FR 7629, February 16, 1994) directs Federal agencies to identify and address ''disproportionately high and adverse human health or environmental effects'' of their actions on communities with environmental justice (EJ) concerns to the greatest extent practicable and permitted by law. EPA defines EJ as ''the fair treatment and meaningful involvement of all people regardless of race, color, national origin, or income with respect to the development, implementation, and enforcement of environmental laws, regulations, and policies.'' EPA further defines the term fair treatment to mean that ''no group of people should bear a disproportionate burden of environmental harms and risks, including those resulting from the negative environmental consequences of industrial, governmental, and commercial operations or programs and policies.''

In the proposed rule we explained that we had considered specific information related to EJ, consisting of an EJSCREEN analysis for Duchesne and Uintah Counties, along with the ozone design values for the area. As explained in our Response to Comments document, we received additional EJ-related information during the public comment period and have considered that information in taking this final action. Due to the nature of the action being taken here, this action is expected to have a neutral to positive impact on the air quality of the affected area. Our final action is consistent with the stated goal of E.O. 12898 of achieving environmental justice for communities with EJ concerns.

*K. Congressional Review Act*

This rule is exempt from the Congressional Review Act (CRA) because it is a rule of particular applicability. The rule makes factual determinations for an identified entity (Uinta Basin, UT area), based on facts and circumstances specific to that entity. The determinations of attainment and failure to attain the 2015 ozone NAAQS do not in themselves create any new requirements beyond what is mandated by the CAA.

*L. Judicial Review*

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by February 14, 2025. Filing a petition for reconsideration by the Administrator of this action does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed and shall not postpone the effectiveness of this action. This action may not be challenged later in proceedings to enforce its requirements (see section 307(b)(2)).

**List of Subjects in 40 CFR Part 81**

Environmental protection, Air pollution control, Intergovernmental relations, Nitrogen dioxide, Ozone, Reporting and recordkeeping requirements, Volatile organic compounds.

Dated: December 6, 2024.

**KC Becker,**

*Regional Administrator, Region 8.*

For the reasons stated in the preamble the Environmental Protection Agency amends title 40 CFR part 81 as follows:

## PART 81—DESIGNATION OF AREAS FOR AIR QUALITY PLANNING PURPOSES

■ 1. The authority citation for part 81 continues to read as follows:

**Authority:** 42 U.S.C. 7401, *et seq.*

### Subpart C—Section 107 Attainment Status Designations

■ 2. In § 81.345, the table titled ''Utah—2015 8-Hour Ozone NAAQS [Primary and Secondary]'' is amended by revising the entry ''Uinta Basin, UT'' to read as follows:

**§ 81.345 Utah.**

\* \* \* \* \*

### UTAH—2015 8-HOUR OZONE NAAQS

[Primary and secondary]

| Designated area [1] | Designation Date [2] | Designation Type | Classification Date [2] | Classification Type |
|---|---|---|---|---|
| * | * | * | * | * |
| Uinta Basin, UT [3] | | Nonattainment | January 15, 2025 | Moderate. |
| Duchesne County (part): All land in Duchesne County below a contiguous external perimeter of 6,250 ft. in elevation. All areas within that contiguous external perimeter are included in the nonattainment area—including mesas and buttes which may have an elevation greater than 6,250 ft., but which are surrounded on all sides by land lower than 6,250 ft. Additionally, areas that fall outside the 6,250 ft. contiguous external perimeter that have elevations less than 6,250 ft. are excluded from the nonattainment area. The boundary is defined by the 6,250 ft. contour line created from the 2013 USGS 10-meter seamless Digital Elevation Model (USGS NED n41w1101/3 arc-second 2013 1 × 1 degree IMG). | | | | |
| Uintah County (part): All land in Uintah County below a contiguous external perimeter of 6,250 ft. in elevation. All areas within that contiguous external perimeter are included in the nonattainment area—including mesas and buttes which may have an elevation greater than 6,250 ft., but which are surrounded on all sides by land lower than 6,250 ft. Additionally, areas that fall outside the 6,250 ft. contiguous external perimeter that have elevations less than 6,250 ft. are excluded from the nonattainment area. The boundary is defined by the 6,250 ft. contour line created from the 2013 USGS 10-meter seamless Digital Elevation Model (USGS NED n41w1101/3 arc-second 2013 1 x 1 degree IMG). | | | | |
| * | * | * | * | * |

[1] Includes any Indian country in each county or area, unless otherwise specified. EPA is not determining the boundaries of any area of Indian country in this table, including any area of Indian country located in the larger designation area. The inclusion of any Indian country in the designation area is not a determination that the state has regulatory authority under the Clean Air Act for such Indian country.

[2] This date is August 3, 2018, unless otherwise noted.

[3] The EPA is designating portions of the Uinta Basin as "nonattainment," including both Tribal and State lands. The Ute Indian Tribe has air quality planning jurisdiction in the areas of Indian country included in the Uinta Basin nonattainment area, while the State of Utah has air quality planning jurisdiction in the areas of State land included in the Uinta Basin nonattainment area.

* * * * *

[FR Doc. 2024–29246 Filed 12–13–24; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 745**

[EPA–HQ–OPPT–2023–0231; FRL–8524–03–OCSPP]

**RIN 2070–AK91**

### Reconsideration of the Dust-Lead Hazard Standards and Dust-Lead Post-Abatement Clearance Levels; Correction

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule; correction.

**SUMMARY:** The Environmental Protection Agency (EPA) is making corrections to a final rule that appeared in the **Federal Register** of November 12, 2024, that finalized several revisions to EPA's lead-based paint (LBP) regulations. Subsequent to publication, the Office of the Federal Register (OFR) informed the Agency that there were errors in the amendatory instructions that describe specific revisions for two sections of the regulation. The corrections to the amendatory instructions will allow for the proper revisions to be incorporated into the Code of Federal Regulations (CFR).

**DATES:** This final rule correction is effective January 13, 2025.

**ADDRESSES:** The docket for this action, identified by docket identification (ID) number EPA–HQ–OPPT–2023–0231, is available online at *https://www.regulations.gov*. Additional information about dockets generally, along with instructions for visiting the docket in-person, is available at *https://www.epa.gov/dockets*.

**FOR FURTHER INFORMATION CONTACT:**

*For technical information:* Claire Brisse, Existing Chemicals Risk Management Division (7404M), Office of Pollution Prevention and Toxics, Environmental Protection Agency, 1200 Pennsylvania Ave. NW, Washington, DC 20460–0001; telephone number: (202) 564–9004; email address: *brisse.claire@epa.gov*.

*For general information on lead:* The National Lead Information Center, 422 South Clinton Avenue, Rochester, NY 14620; telephone number: (800) 424–LEAD [5323]; online form: *https://www.epa.gov/lead/forms/lead-hotline-national-lead-information-center*.

*For general information on TSCA:* The TSCA Hotline, ABVI-Goodwill, 422 South Clinton Ave., Rochester, NY 14620; telephone number: (202) 554–1404; email address: *TSCA-Hotline@epa.gov*.

*For hearing- or speech-impaired assistance:* Persons may reach the telephone numbers for the contacts through TTY by calling the toll-free Federal Communications Commission's Telecommunications Relay Service at 711.

**SUPPLEMENTARY INFORMATION:** EPA is correcting the final rule that published in the **Federal Register** of November 12,